Good morning, Your Honor. I'd like to briefly address the uncertified claim, which is the one that, if successful, would get Mr. Godbouldt possibly in a trial. I don't believe the Court gave permission to address the uncertified claim. Did we, counsel? No. Okay. Then am I barred from arguing? Well, I mean, I suppose you can argue, but since we haven't granted a certificate of appealability on it, I'm not sure, in the absence of the grant, that we can give you any relief on it. Perhaps I misunderstood the rules, but my understanding was that the only requirement was that I separate and make clear to the Court what was certified, what the COA was granted by Judge Damrell, and what wasn't. Didn't we just decide a case? Maybe it hasn't come down yet. Argue whatever you want, but I have a concern in my mind as to whether we can grant you any relief on that certified claim. I won't spend a lot of time on that case. The only point I'll make with respect to that is that the legal error that was committed by the district court was that he set the bar too high in this case. Under your cases, and even under the case that the magistrate judge cited, Phillips v. Woodward, all that a plaintiff need do in a habeas matter is make a colorable claim of which, if proven, would entitle him to relief. And here, the claim was pretty clear, that you had a mentally ill defendant and the lawyer failed to talk to a mental health professional and to other potentially available witnesses to say that whatever the guy, however the guy looked at trial, he was, in fact, possibly still delusional. So that's that. Well, I think our rule says that if you are denied a COA on an issue, you can brief it, and then if the panel chooses it, it can consider the issue. So I wanted just to make sure that it was to the extent that it could be here, that it's here. Sure. Go ahead to your next issue. The other one is this business of criminal threats and filtering through the two levels of whether a reasonable jury could so conclude and then whether a reasonable the second level, whether a reasonable court could so conclude. Respondent's argument is that, well, and the magistrate judge held that, well, you know, this is a situation where the jury could have gone either way, and therefore you're obliged to say, well, the jury probably went the right way. My argument is that this is not so much a matter of either this or that, but basically a lacuna in the record. If you read the record, and the magistrate judge went over it pretty carefully also, the victim in this case was frightened by the fact that he was robbed. That in itself is not enough to sustain a charge of criminal threats. Then what happened, as I'm sure you know, is that the defendant in this case threatened the wrong person. These threats were ultimately conveyed to the victim. And at trial, the victim was asked if he was frightened of the defendant. Yeah. I think the what is the record that your client thought that the ride-along in the patrol car was the victim's mother or wife? It seems like everybody was pretty delusional in this case, actually. I mean, at least one could say. And he said, I'm going to find you and kill you and kill your children.  But the victim didn't know that, okay? Three or four days later, it was conveyed to him. He forgot about it. And then on the day of trial, he was reminded, oh, by the way, do you remember about these threats? And he said, yeah. So they get up on the stand, and they asked him, well, you know, do you remember that this we reported this to you? And he said, yeah. And it made me cry a little bit. And then on cross, it was wasn't clear that he even remembered it. He wasn't really concerned because the man was in jail. My client was in jail. And then the bottom line is at the end, on redirect, trying to rescue this sort of third-hand threat, the prosecutor says, you were asked some questions about whether you were scared of the defendant today. We are in a kind of a controlled situation here. Well, he still looks threatening, though. If you were to see him outside the courtroom, just run into him on the street, would you be scared of him? Yes, I would be. My submission to you is that if somebody robbed you, you'd be scared of them if you saw him. Mr. Ward, help me with the standards of review here. The problem I'm having with your argument is that is the argument that was made to the California Court of Appeal. The California Court of Appeal ruled as a matter of State law that that evidence was sufficient to establish or permit a reasonable jury to conclude that there were criminal threats under 422. Then we have the deferential AEDPA standard where we would have to declare that it was objectively unreasonable for the California courts to interpret their own State law and the evidence in support of it to establish a State crime. And to me, that's a – it's like a double burden on you. I'm only too aware of the AEDPA standard, Judge. You know, it really changed the game. No, I know. And I'm not being facetious with you. But the problem I'm having is it's a great argument in the State court. Yeah. I was told by Judge Wallace about a year ago or another. But I think that here actually, and I think it righteously can be said, that just strictly based on the record, you have to make a speculative leap. And under the Due Process Clause, as well as under California cases interpreting due process, a jury verdict has to be based on solid, credible evidence and not mere speculation. And I'm saying that's – you know, it is cutting – just as AEDPA cuts the cheese pretty thin, I think we can also cut, you know, what's sauce for the goose is sauce for the yander. But AEDPA also tells us that here the California court of appeals cited to Jackson v. Virginia. So they knew the Supreme Court. They knew the standard. And they knew the standard. They applied it. And what you're asking us to do is to declare that they were wrong under Jackson v. Virginia. And there's the language in those cases where the Supreme Court has said to us, it has to be more than they were just wrong. It has to be objectively unreasonable, which is a higher standard above they applied the standard but got it wrong. Well, at that level of generality, it's – you know, it's an impossible situation. I say that based on the specifics of what actually happened here in front of the jury, it's not impossible at all. On the contrary, that there's – to just sort of reiterate, and then I think you will have seized my argument, there's a difference between seeing someone who allegedly robbed you, being frightened, and then seeing as a result of the fact that he made these threats that were conveyed to a third party later retailed to him, later necessitating that he be reminded of them. And then the specific question that sort of finished the day was, well, he looks threatening. But it doesn't say he looks threatening. It doesn't say, you know, he threatened me and I'm frightened. And that's what a criminal threat requires. I don't think you're arguing that it's totally illogical for the victim of a strong-arm robbery to include the consideration of that experience in weighing the sincerity of the threat that the same defendant later makes against him. No, I'm not. But I'm saying that there is a causal requirement that the fear has to be the result of the threat. I mean, you know, we could – Why couldn't the jury look at the fact that the victim had been the victim of a strong-arm robbery and consider that fact as well as the words the defendant used to the ride-along in conveying an intent to kill the victim and his family when he got out of jail? Well, I don't think the issue here is really the credibility of the threat, so much whether or not there was actually fear instilled by the words. And what I'm saying undercuts that and makes it unreasonable. You're not making my question clear. I just want to know if you agree that it would be relevant in determining whether or not this was a sincere threat to factor in the fact that the victim had been the victim of a strong-arm robbery by the same person who uttered the threat later. It would be hard to say that that's irrelevant, Judge. I mean, you know. But as I say, if you look carefully at precisely what happened, I think, you know, sometimes things are just unreasonable. Do you want to save some time for rebuttal? A couple of minutes. Thank you. Okay. Thanks for your argument. We'll hear from the State at this time. Mr. Smiley. Good morning, Your Honor. May it please the Court. Brian Smiley from the Attorney General's Office representing the warden, Mr. Lamarck. The statute requires sustained fear. And the California cases say it can't be momentary. It's got to be sustained. Correct. And the fear here seems to have been, and I take it that when you say sustained fear, sustained fear on the part of the victim, right? That's correct. And it seems to have lasted for about the amount of time he was on the stand, and then only on the assumption that he might bump into this guy when he got out of prison. The record shows that. Tell us how that equals sustained. Well, you're correct. Sustained is defined by its opposites. It's anything that's beyond momentary, transitory, or fleeting is the way California law defines sustained. People v. Allen says it must be more than momentary, fleeting, or transitory. Right. I said beyond, but, yeah, more than momentary, fleeting, or transitory. And the record shows on page 112 of the RT that the ride-along, Ms. Eichinger, advised Holt, the victim of the threats, at 8.30 in the morning. It was later on during that day at trial that Mr. Holt testified that he was still in fear. And he also said that he was in fear at the time that Eichinger had relayed those threats to him. So it was one, two, three hours later. So we know there was fear during that time period. And California law has held that in that People v. Allen case, cited in all the briefs, that 15 minutes of fear is, quote, more than sufficient to constitute sustained fear. So clearly we have something here that satisfies the sustained element. Okay. The issue before the Court today is really very narrow. The record is not that long in terms of what was related on regarding the threat. The one thing that I would point out to the Court, though, just to direct its attention to it, is that the jury didn't have to just make a speculative belief to conclude that Holt's fear was causally connected to the threats by the victim, by Godbolt. And the reason is that, as Mr. Ward pointed out, remember that three days after the crime, the victim was told about the threats. And he said, I wasn't too worried about it because I knew that Mr. Godbolt was locked up, couldn't get to me. Well, what was it that triggered his fear? It was on the day of trial, 8 a.m. when Eichinger told him about the threat. It was the threats. It wasn't just that, oh, yeah, he started thinking about the robbery that he had suffered four months before trial. It was the threats that all of a sudden triggered his fear. So there's clearly a causal connection between the threats that Godbolt made in the back of the police car as he was getting taken to booking and the victim's fear. One last thing. This is not a supplemental authority, but I did notice when I was preparing for oral argument, the United States Supreme Court granted certiorari, there's been no decision yet, it will be next term, in a case called McDaniel v. Brown, which is out of this circuit, a Nevada case from the circuit. It was called in here Brown v. Farwell. And the whole issue apparently is how to correctly apply the deferential standard of Jackson v. Virginia. So I just, it's probably the decision that probably won't come down for six to nine months, but. Okay. Thank you, Your Honor. Thank you for alerting us to that. Rebuttal? Well, simply that we don't know what went on in the victim's mind from the time he was told of the threats until the time that he appeared on the stand. And so where I rest is that it's speculation and not a conclusion that could go either way. And I think it's. Do we know who this ride-along was? It looked to me like she might be a deputy district attorney, but. I don't think we. Is there any indication in the record as to who she was? I know we have her name. I think they have her. I don't know who I am at that time. There is a piece of record that at the time she was testified, she said she was applying to the cabinet. Oh, okay. Right. Right. Okay. Thank you very much. Okay. All right. Thank you both. The case just argued will be submitted for decision.
judges: Hug, Hawkins, Tallman